AMERICAN NAT. BANK v. WOLFE.—125 S. W. (2d) 193.

Middle Section. Oct. 29, 1938.

Petition for Certiorari Denied by Supreme Court, March 4, 1939.

Trabue, Hume & Armistead, L. M. Davis, and Reber Boult, all of Nashville, for plaintiff in error Bank.

White & Howard, of Nashville, for defendants in error Wolfe.

CROWNOVER, J. These two suits were, by agreement, tried together in the Circuit Court of Davidson County, as they arose out of the same accident.

Mrs. Emily Mildred Wolfe sued to recover damages for personal injuries sustained by her from a fall while descending a stairway leading from the first floor to the basement floor in the defendant's bank.

Her husband, Willie B. Wolfe, sued to recover for the loss of her services.

Each declaration contained two counts. In the first count of each it was averred that the defendant Bank maintained a stairway in an unsafe and dangerous condition in a portion of the bank which the public was invited and expected to use; that the steps were constructed of marble, the treads of which were worn to some extent so as to make a sloping surface, and there was a hand-rail on only one side thereof; that the plaintiff Mrs. Wolfe slipped on the worn and slick steps, was unable to catch hold of anything to check her fall because of the absence of a hand-rail on the left side thereof, and fell to the bottom of the stairway, sustaining injuries.

In the second count it was averred that the defendant Bank, by maintaining a stairway with a hand-rail only on the right side thereof, violated the building ordinances of the city of Nashville, which require that a stairway in a building of this kind shall have a hand-rail on both sides thereof; and that the failure of defendant to have a hand-rail on the left side was the proximate cause of the plaintiff Mrs. Wolfe's injuries.

The defendant pleaded the general issue of not guilty in each case.

The cases were tried together to a jury. At the close of the plaintiffs' evidence and again at the conclusion of all the evidence the defendant Bank moved the court for peremptory instructions in its favor, which motions were overruled, to which the defendant excepted. The jury returned verdicts of $1,000 in favor of Mrs. Wolfe and $250 in favor of Mr. Wolfe and against the defendant Bank.

The defendant's motion for a new trial in each case was overruled, to which it excepted, and appealed in error to this Court, and has assigned errors as follows:

There is no evidence to support the verdicts, and the court erred in overruling defendant's motions for a directed verdict in each case at the conclusion of all the evidence.

The defendant, the American National Bank, owns a six-story building in the city of Nashville, on the northeast corner of Union Street and Fourth Avenue, North, which building was constructed in 1916. The Bank occupies the three lower floors, and the other three floors are leased to various tenants. On the first, or ground,

floor the Bank maintains a regular banking department, with the various tellers' windows, and offices, all separated from the lobby by counters and grilles.

The safety deposit department is in the basement, where many deposit boxes are rented to the public. The entrance to this department is by means of a stairway leading from the main floor of the Bank, over the entrance to which is a sign reading, "Safety Deposit Vaults." In the basement is a hall, or lobby, into which the stairway descends, and also two elevators descend into same, which serve the bank building. This hall in the basement contains chairs and a settee. On one side of it is the directors' room, and on the other the safety deposit vaults, which are separated from the hall or lobby by a steel grille.

There is nothing at the entrance to the stairway to indicate that it should be used only by the patrons of the safety deposit boxes, and nothing to suggest that the Safety Deposit Department is not a part of the Bank which is open to the public.

This stairway has a hand-rail on the right side, but none on the left side, but has a marble wainscotting on that side. The steps are marble, slightly worn—the treads of the first two steps being worn down about $\frac{3}{16}$ of an inch. The steps are about 54 inches wide, and the stairway was sufficiently lighted.

The plaintiff, Mrs. Wolfe, neither had an account with the Bank nor a rented safety deposit box. She was 52 years of age, and lived in the country and had led an active life. She went into the Bank to have a five dollar bill changed. When she received the change she put it in her handbag and began to look about for a ladies' rest room. She saw none on the first floor. Thinking there might be one on the basement floor, she started down this stairway, without putting her hand on the hand-rail. As she put her right foot on the first step below the main lobby level, her foot slipped; whereupon she attempted to steady herself by placing her left foot on the next step below, but this foot also slipped and she fell against the left side of the enclosed stairs; she attempted to catch hold of the wall, but there was no hand-rail on the left side, and she fell the entire length of the stairs to the landing below, breaking her leg.

There was no foreign substance on the steps.

There was a rest room on the basement floor, but it was not a public one. It was intended for the use of the female employees of the Bank, who reached it by means of a stairway at the opposite end of the building.

There was no public rest room in the Bank or in that building.

The Bank invites the public to come into its banking house and make use of its facilities.

It has thirty or forty thousand customers and about sixteen hundred renters of safety deposit boxes.

The questions involved are:

(1) Was the plaintiff an invitee at the time and place she was injured, or merely a licensee?

(2) Was the absence of a hand-rail on the left side of the stairway the proximate cause of her fall?

(3) Was the plaintiff guilty of contributory negligence?

1. The principal contention in the case is whether Mrs. Wolfe was an invitee, or merely a licensee, on the defendant's premises at the time she was injured.

It is admitted by the Bank that when Mrs. Wolfe entered the main banking room on the first or ground floor to obtain change for a five dollar bill she was an invitee.

The Bank, therefore, owed her the duty to exercise ordinary care and prudence to render the premises reasonably safe for her visit. 3 Shearman and Redfield on Negligence (6 Ed.), secs. 704 and 706; 45 C. J., 823-829; 1 Thompson on Negligence (2 Ed.), sec. 985; Rosenbaum v. Shoffner, 98 Tenn., 624, 40 S. W., 1086; Dush v. Fitzhugh, 70 Tenn., 307, 2 Lea, 307, 309.

But it is insisted by the Bank, (a) that when this business was finished and she began to wander around the bank looking for a rest room, she was no longer an invitee, but a licensee, as she had turned aside to pursue a purpose of her own; and (b) that when she started down this stairway to the basement she went beyond the limits of her invitation, as this stairway was intended for the use of renters of safety deposit boxes only; that the duty of the owner to keep the premises in reasonably safe condition for those impliedly invited thereon extends only to those parts of the premises where the person invited is expected to go. Citing, Worsham v. Dempster, 148 Tenn., 267, 275, 255 S. W., 52; Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn., 288, 294, 210 S. W., 153; 45 C. J., 830-832; 1 Thompson on Negligence (2 Ed.), secs. 988-990.

But we think these contentions are unsound for the following reasons:

(a) "A person who goes upon premises for business purposes is not deprived of the right to protection against defects by the fact that, at the moment of the injury, he was not engaged in the business for which he came, but was pursuing a purpose of his own." 20 R. C. L., 69, sec. 60; Pauckner v. Wakem, 231 Ill., 276, 83 N. E., 202, 14 L. R. A. (N. S.), 1118; Glaser v. Rothschild, 221 Mo. 180, 120 S. W., 1, 22 L. R. A. (N. S.), 1045, 17 Ann. Cas. 576, and notes; Randolph v. Great Atl. & Pac. Tea Co., 3 Cir., 64 F. (2d), 247.

(b) After carefully reading the evidence we are of the opinion that the plaintiff, when she began to descend this stairway, had reasonable ground, on account of the arrangement of the building, for believing that she was invited or expected to go down the stairway.

■ If not a question for the court, it was certainly a question "for the jury to visualize the situation from the evidence, and decide whether the plaintiff had reasonable ground from what she saw for believing that she was invited or expected to go where she did go." MacDonough v. F. W. Woolworth Co., 91 N. J. L., 677, 103 A., 74.

The jury, by its verdict, evidently found that she believed she was invited to use the stairway, and that the stairway and basement lobby were open to the public.

"An invitation [to enter premises] is implied when the owner, by acts or conduct, leads another to the belief that the use is in accordance with the design for which the place was adapted and allowed to be used in mutuality of interest." Robinson v. Leighton, 122 Me., 309, 119 A., 809, 30 A. L. R., 1386, 1389; Garis v. Eberling, 18 Tenn. App., 1, 71 S. W. (2d), 215, 222.

"The duty to keep the premises safe for invitees extends to all portions of the premises which are included within the invitation and which it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended, and at which his presence should therefore reasonably be anticipated, or to which he is allowed to go. Smith v. Jewell Cotton Mill Co., 29 Ga. App., 461, 116 S. E., 17. The duty to keep premises safe for invitees extends to any part thereof which one is specifically invited to enter, even though the place so entered is not designed for the use of, or ordinary use of, persons coming to the premises on business. Foley v. Hornung, 35 Cal. App., 304, 169 P. 705; Branham's Adm'r v. Buckley, 158 Ky., 848, 166 S. W., 618, Ann. Cas., 1915D, 861. If the invitee does not go beyond that part of the premises to which, as the situation reasonably appears to him, the invitation extends, he cannot be held to have become a mere licensee because, as a matter of fact, the purposes of the invitation could have been fulfilled without going on such part of the premises. Clark v. American Express Co., 197 Mass. 160, 83 N. E., 365." Coffer v. Bradshaw, 46 Ga. App., 143, 167 S. E., 119, 123.

"Where one enters the premises of another upon an express or implied invitation extended by the latter, or by some one on his behalf, the duty of the owner to have the premises in such condition that the invitation may be accepted without danger of personal injury is not limited to the specific place to which the invitation refers, but extends to such other parts of the premises as may be visited by the invitee for a purpose reasonably incidental to that

for which the invitation was extended. But if the person invited goes to a part of the premises other than that covered by the invitation for a purpose not reasonably connected therewith, or temporarily uses the premises in a manner inconsistent with the purpose of the invitation, he takes the risk of injury attendant upon his so doing." See note to Glaser v. Rothschild, 17 Ann. Cas. 591, and cases cited.

This right extends to such other parts of the premises as may be visited by the invitee for a purpose reasonably incidental to that for which the invitation was extended. Hatcher v. Cantrell, 16 Tenn. App., 544, 65 S. W. (2d), 247.

"Duty to keep premises safe for an invitee extends to all portions thereof invitee must use in course of business for which invitation is extended and to which he is allowed to go." Coffer v. Bradshaw, 46 Ga. App., 143, 167 S. E., 119, 123.

"The invitation must be held broad enough to give the [plaintiff] the protection of the law while lawfully upon that portion of the premises reasonably embraced within the object of his visit." Pauckner v. Wakem, 231 Ill., 276, 83 N. E., 202, 205, 14 L. R. A. (N. S.), 1118.

"The owner or occupant of premises is liable for injuries sustained by persons who have entered lawfully thereon only when the injury results from the use and occupation of that part of the premises which has been designated, adapted, and prepared for the accommodation of such persons. If a person, although on the premises by invitation, deviates from the accustomed way or goes to a place other than such as are covered by the invitation, the owner's duty of care ceases forthwith." 20 R. C. L., 67-68, sec. 59.

"An invitee in a store is not to be too circumscribed as to his movements while waiting for a clerk to exhibit goods. He has a right to inspect goods and frequent places used by other patrons of the store and provided for their use by the storekeeper." S. H. Kress & Co. v. Markline, 117 Miss., 37, 77 So., 858, 865, Ann. Cas., 1918E, 310.

"Invitation of proprietor of public place of business extends to portions where invitee would naturally be likely to go under conditions of invitation, and such implied invitation may be manifested by arrangement of premises or conduct of proprietor." Stewart v. Lido Cafe et al., 13 Cal. App. (2d), 46, 56 P. (2d), 553.

In the Tennessee cases relied on by the defendant the plaintiff had gone to parts of the building which were not intended for the reception of visitors or customers.

We also think the cases Peebles v. Exchange Building Co., 6 Cir., 15 F. (2d), 335, and F. H. Corder v. Mrs. Myrtle Lane, Admrx.,

Sumner Law,[1] an opinion by the Supreme Court in 1934, are not controlling as the facts and the situations are different.

 (c) If the owner or occupant of the premises maintains a rest room for the use of customers, the customer who comes upon the place for business purposes, but goes to the rest room, is still an invitee. McClusky v. Duncan, 216 Ala., 388, 113 So., 250; John Spry Lumber Co. v. Duggan, 182 Ill., 218, 54 N. E., 1002.

 In the instant case Mrs. Wolfe came into the Bank on business and was impliedly an invitee. The fact that she sought a rest room did not change her status, as she did not leave the part of the building to which she was impliedly invited. There is sufficient evidence to sustain the finding of the jury that she had reasonable ground for believing that she was invited to descend the stairway leading to the basement.

2. There was sufficient evidence to go to the jury on the question whether the absence of a hand-rail on the left side of the stairway was the proximate cause of Mrs. Wolfe's fall.

 It is shown that there was no foreign substance on the steps; it is not shown that the accident was caused by the steps being worn; the absence of the hand-rail did not cause her to slip; but she said that she fell against the wall and tried to catch to the wall but couldn't hold to the coping, as there was no hand-rail. But it is a question for the jury whether, after her feet slipped and she fell to the left side of the stairs, she could have caught the hand rail (if there had been a hand-rail there) and stopped her fall. Rosenbaum v. Shoffner, 98 Tenn., 624, 40 S. W., 1086; Postal Telegraph-Cable Co. v. Zopfi, 93 Tenn., 369, 24 S. W., 633; Anderson v. Miller, 96 Tenn., 35, 33 S. W., 615, 31 L. R. A., 604, 54 Am. St. Rep., 812; Fairbanks, Morse & Co. v. Gambill, 142 Tenn., 633, 222 S. W., 5; Renfro Drug Co. v. Jackson, Tex. Civ. App., 81 S. W. (2d), 101; 22 R. C. L., 115.

"In action against drug store proprietor for injuries to customer falling on stairs, evidence that there was no handrail, that there was no light on stairway, and that stairway was dark at bottom without a light, held for jury on issues of negligence and proximate cause." Renfro Drug Co. v. Jackson, Tex. Civ. App., 81 S. W. (2d), 101.

"The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which had it not happened, the injury would not have been inflicted, notwithstanding the latter." Deming & Co. v. Merchants' Cotton-Press, etc., Co., 90 Tenn., 306, 353, 17 S. W., 89, 99, 13 L. R. A., 518.

---

[1]See opinion of Court of Appeals, 18 Tenn. App., 51, 72 S. W. (2d) 570.

The building ordinances of the City of Nashville require all enclosed stairways shall have on both sides a strong hand-rail firmly secured in the wall about 3 inches distant therefrom and about 30 inches above the floor of the stairs, in buildings of this kind.

■ The bank's failure to have this hand rail on the stairs as prescribed by a City ordinance, was negligence per se. 45 C. J., 717; R. R. Co. v. Haynes, 112 Tenn., 712, 713, 81 S. W., 374; R. R. Co. v. Martin, 113 Tenn., 266, 267, 87 S. W., 418; Chattanooga Station Co. v. Harper, 138 Tenn., 562, 566, 199 S. W., 394; Stearns v. Williams & Price, 12 Tenn. App., 427, 432.

■ But the defendant will be liable only where the violation of the ordinance is the proximate cause of the injuries complained of. 21 Am. & Eng. Ency. of Law, (2 Ed.), 480; Queen v. Dayton Coal, etc., Co., 95 Tenn., 458, 32 S. W., 460, 30 L. R. A., 82, 49 Am. St. Rep., 935; Greyhound Lines, Inc. v. Patterson, 14 Tenn. App., 652, 665; Hines v. Partridge, 144 Tenn., 219, 231 S. W., 16; Adams v. Inn Co., 117 Tenn., 470, 101 S. W., 428.

It was a question for the jury whether the violation of the ordinance was the proximate cause of the injury. 22 R. C. L., 148, 149, sec. 31; Greyhound Lines, Inc. v. Patterson, supra.

■ 3. The question of plaintiff's contributory negligence in not holding on to the hand rail was properly submitted to the jury, and it has decided in favor of the plaintiffs.

The question of ordinary care applicable to both sides in these actions was aptly stated by our Supreme Court in the case of Nashville, C. & St. L. Railroad v. Wade, 127 Tenn., 154, 158, 159, 153 S. W., 1120, 1121, Ann. Cas., 1914B, 1020:

"Ordinary care is that degree of care which a person of reasonable prudence would exercise under a given state of facts appearing in the evidence in a cause, or in a state of facts similar thereto. This ordinary care may be positive or negative; that is, it may consist of what a person of reasonable prudence would have done under the same or similar circumstances, or of refraining from doing what he would have refrained from doing under these circumstances. What a person of reasonable prudence would have done under the same or similar circumstances must be determined by the jury from their knowledge of mankind, and of how persons of reasonable prudence usually deport themselves in relation to their surroundings.

"Whether ordinary care was exercised under any given or proven state of facts must always be determined in relation to and in the light of the facts themselves, since what is ordinary care under one state of facts may be less than or more than ordinary care under another and different state of facts. That is to say, a person of reasonable prudence will deem necessary a greater degree of caution and of attention to the circumstances surrounding himself,

and the person with whom he is dealing, or with whose property he is dealing, where these circumstances are difficult to manage, and where a mistake is likely to result in serious injury, than where the circumstances are simple and uncomplicated, and easy to deal with, and where a mistake in such dealing will not have any serious consequences. This is equivalent to saying a person of reasonable prudence governs his conduct according to the nature, character, and gravity of the circumstances, or state of facts, or business, or part of department of business with which he has [to] deal.''

No question is raised as to the amounts of the verdicts.

All the assignments of error being overruled the judgments are affirmed. Judgments for the respective amounts with interest from their rendition in the court below to the present, together with all costs that accrued in the lower court, will be entered in this court in favor of the respective plaintiffs below and against the defendant bank. The costs of the appeal are adjudged against the bank and the sureties on its appeal bonds.

Faw, P. J., and Felts, J., concur.