GAINES *et al. v.* TENNESSEE CENT. RY. CO.

(*Nashville*, December Term, 1939.)

Opinion filed January 20, 1940.

LARKIN CROUCH and MILLER MANIER, both of Nashville, for plaintiffs.

ROBERTS & ROBERTS and WALTER STOKES, all of Nashville, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

These three suits were tried together. They grew out of a collision between an automobile driven by plaintiff Petree in which plaintiff Mrs. Martha Petree and plaintiff Frank Gaines were riding. Mrs. Petree and Gaines sued for damages for personal injuries. Petree sued for damages to his automobile and to recover expenses incurred on account of injuries to Mrs. Petree, his wife. There was a judgment for the defendant below in the three cases. The Court of Appeals, affirming the judgment of the lower court in the main, reversed and remanded the case for a new trial, restricted in scope, as will hereinafter appear. Petitions for *certiorari* were filed by all parties, all these petitions granted, and the case has been heard on brief and argument in this court.

The accident occurred just inside the city limits of Nashville at the intersection of the tracks of defendant Railway Company with the Murfreesboro Road. The plaintiffs were driving into the city, coming from Huntsville, Alabama, when their car was struck by one of defendant's trains passing over the crossing from the west, that is, from plaintiffs' lefthand side.

Grounds of negligence alleged by plaintiffs were that defendant failed to observe the requirements of subsections (2), (3), and (4) of section 2628 of the Code, the railroad precautions statute; and that defendant was guilty of common law negligence in failing to use ordinary care to avoid the accident after it became apparent that a collision was imminent; and that defendant was guilty of further common law negligence with regard to inspection and maintenance of an automatic warning signal device that it had installed at this crossing which failed to work at this time. An amendment to their declarations was offered by the plaintiffs charging the defendant with negligence in failing to observe a city ordinance requiring railroad companies to keep a flagman at each crossing within the municipality. This amendment was not permitted by the trial judge.

The circuit court directed a verdict in favor of the defendant on the common law counts of the declarations and on the counts of the declarations based on subsection (4) of section 2628 of the Code. He submitted the case to the jury upon the issues raised by those counts of the declarations based on subsections (2) and (3) of the statute and the jury found in favor of defendant on these counts.

The Court of Appeals affirmed the action of the circuit court save as the latter court refused to permit the declarations to be amended by counts setting out the violation of the municipal ordinance as to flagmen at crossings. The Court of Appeals reversed the judgment below and remanded the case with directions to the trial court to permit this amendment and to restrict the new trial to a determination of the issues arising upon such additional charge.

We agree with the courts below that a verdict

was properly directed upon that count of the declarations charging a violation of subsection (4) of section 2628 of the Code. The evidence makes it plain that the automobile appeared as an obstruction on the track too late to permit those on the engine to blow the whistle, apply the brakes, or otherwise try to avert the collision. Subsection (4) requires that the whistle be blown, the brakes applied, and every possible means be employed to stop the train when an "obstruction appears upon the road." As ruled in many decisions of this court, appearance on the road means appearance on the track in front of the moving train, or so near that the object will be struck by the moving train. *Tennessee Central R. Co.* v. *Binkley,* 127 Tenn., 77, 153 S. W., 59; *Chesapeake & N. Ry.* v. *Crews,* 118 Tenn., 52, 99 S. W., 368; *Nashville C. & St. L. R. Co.* v. *Seaborn,* 85 Tenn., 391, 4 S. W., 661.

█ Until this automobile appeared, therefore, as an obstruction "upon the road," as those words are above defined, the duty of the engine men respecting the approaching automobile was not to be tested by subsection (4), but by the common law. There was no opportunity here for the observance of the precautions required by subsection (4) between the time the automobile appeared upon the track and the time it was struck. These two events were practically simultaneous.

It is furthermore clear upon the record before us that there was abundant evidence to justify the finding of the jury that the defendant had observed the requirements of subsection (2) and subsection (3) of section 2628 of the Code. That is the evidence was abundant that the whistle or bell on the engine was duly sounded upon the approach of the train to this crossing, and that the whistle or bell was duly sounded upon the approach of the train to the city.

■ The plaintiffs developed their case below at much length and we have no doubt but that they introduced all the evidence possible to obtain which would tend to show a violation by defendant Railway Company of any of these statutory precautions. We agree, therefore, with the Court of Appeals that justice will not be furthered by another trial of these particular issues and that any new trial should be to some extent limited in its scope. We likewise agree with the Court of Appeals that a new trial should be awarded in this case, but we think that court has too greatly restricted the remand.

The Court of Appeals found evidence of common law negligence on the part of the defendant in failing to warn the occupants of the approaching automobile by a bell or whistle and in failing to make an effort to stop the train after it became apparent to the engineer that the automobile was approaching the track under circumstances indicating that those therein were unaware of the approach of the train and that a collision was imminent unless something was done. The Court of Appeals further found evidence of common law negligence on the part of defendant with regard to the inspection and maintenance of this automatic signal device, which it is conceded failed to function on this occasion.

■ Defendant's petition for *certiorari* does not challenge these findings of the Court of Appeals by any assignments of error and we must accordingly take such findings as correct.

Although the Court of Appeals thus found sufficient evidence of common law negligence on the part of the defendant to take the case to the jury, that court nevertheless concluded that plaintiffs were guilty of such contributory negligence, as a matter of law, as to bar any

recovery on their part and to require a directed verdict against them.

So far we do not take into account the proffered amendment with reference to the city ordinance. Leaving that out of consideration, we are yet unable to agree with the Court of Appeals that the undisputed facts on this record make out a case of contributory negligence against the plaintiffs, as a matter of law, justifying a directed verdict against them on the common law counts.

As indicated above, defendant Railway Company maintained an automatic signal device at this intersection. When this instrumentality was working a bell was rung and red lights thereon displayed upon the approach of a train to the crossing. Petree, driving the automobile, and the others, had been to Nashville before over this road, and all of them could see the automatic signal as the crossing was approached. All of them testified that they watched the signal, and hearing no bell nor seeing any red lights displayed, concluded that the crossing was safe and proceeded upon it. They did not see the train until it was too late to stop the automobile. The evidence shows that the view in the direction from which the train was approaching was somewhat obstructed by adjacent buildings. However, a train might have been discovered in time to have stopped this car before it was struck had an attentive lookout been kept by the driver of the car in a westerly direction.

In the late case of *Southern Railway Co.* v. *Penley,* 175 Tenn., 380, 134 S. W. (2d), 177, opinion filed December 16, 1939, this court held that the rights of a traveler approaching a crossing where a railroad company maintained an automatic signal and the automatic signal failed to function were quite similar to the rights of a traveler approaching a crossing where a railroad

company maintained a flagman and the flagman was absent from his post of duty. The rule in case of an absent flagman was announced by this court in *Tennessee Cent. Railroad Co.* v. *Gilbert,* 131 Tenn., 201, 174 S. W., 812. That rule is in substance that a traveler is not entitled to rely solely upon the absence of the flagman as an indication of safety, yet such absence tended to blunt the edge of caution and that under all the circumstances of the particular case it was for the jury to say, the traveler having observed the absence of the flagman, whether he was to be excused from further looking or listening for an approaching train.

This rule is quite generally said to prevail in cases where an automatic crossing signal fails to function, just as we have applied it in *Southern Railway Co.* v. *Penley, supra.* Numerous cases are collected in Notes, 53 A. L. R., 978, and 99 A. L. R., 733. As observed by the editor of these Notes, some of the cases recognizing the rule give it no practical application and test the conduct of the approaching traveler as though the dead signal device was out of the picture. This court, however, thinks the rule is sound and just and has no inclination to give it lip service only.

Justifying its conclusion that the occupants of this automobile were guilty of contributory negligence as a matter of law, the Court of Appeals said:

"Petree, if he had looked, could have seen the train in time to avoid the accident, he did not look, but relied altogether upon the signal. Moreover, he pulled his car around and passed the other cars which had approached the crossing ahead of him and had stopped and were waiting for the train to pass; and he also failed to see Garrett, who had stopped on the other side of the track and was waving his arms to try to stop him (Petree) be-

fore he drove on the crossing. These matters it is true were brought out by defendant's witnesses; but such witnesses were not impeached and their testimony as to these matters was not in conflict with any of the evidence for plaintiffs, and should, therefore, be looked to in considering whether defendant's motion for peremptory instructions should have been granted.''

If we were able to find with the Court of Appeals that Petree, approaching this crossing, had pulled his car around and passed other cars which had approached the crossing ahead of him and had stopped and were waiting for the train to pass, and that Garrett was just on the other side of the track waiving his arms and making unmistakable efforts to warn Petree—if we could find the evidence without conflict as to these things—doubtless we would agree that there was no jury question here.

A witness named Odom testified for defendant Company that he stopped his car, awaiting the passage of this train, and that there were three other cars stopped ahead of his. That Petree pulled around, passed all four of these waiting cars and went upon the track. Apart from negative evidence of the plaintiffs, defendant's witness Garrett testified that Petree passed only one car on his near approach to this crossing. That Petree passed this car at the top of a hill, which the plat shows was 600 feet from the crossing, that Petree passed no other car between the top of the hill and the crossing, and that Petree approached the crossing upon his (Petree's) right hand side of the road. Adams, another witness introduced by defendant, testified that Petree passed other cars at the top of the hill, and Armstrong, another of defendant's witnesses, standing nearby, saw no cars in front of Petree as he approached the crossing.

It is obvious, therefore, that the evidence is conflicting as to Petree's having pulled out and passed four cars that had stopped awaiting the passage of this train.

The witness Garrett approached the crossing from the other side of the track, coming out from Nashville. He testified that he heard the train whistle, was a railroad employee himself, loved trains and liked to see them pass, and he said he stopped his car waiting for the train to go by, although he had plenty of time to get over the crossing safely. Garrett said that he noted the approach of the Petree car and of the train, thought a collision imminent unless something was done, got out of the car and stood in the street at the edge of the track on the side toward Nashville, and wavied both arms at Petree in an effort to stop him. That Petree however, did not see him (Garrett) or ignored Garrett's signals.

Defendant's witness Armstrong, however, testified that Garrett did not get entirely out into the street, but kept one foot on the running board of his car while he was attempting to warn Petree. Defendant's witness Adams testified that Garrett was standing on the running board of his car while he was attempting to give these signals, signaling with one hand and holding to the wheel of his car with the other.

It is apparent, therefore, from the foregoing that there is a conflict in the proof as to whether Garrett was out in the clear, away from his car, signaling with both hands in an attempt to stop Petree. If, as a matter of fact, Garrett was standing on the running board of his car or immediately against the car, his signals may not have been very clearly observable to a traveler approaching the crossing from the opposite side.

In view, therefore, of this apparent conflict in the evidence, and of the admitted failure of this signal de-

vice to function, and the rule of *Tennessee Cent. Railroad Co.* v. *Gilbert, supra,* we think it should have been left to the jury to say whether the occupants of the automobile were guilty of contributory negligence.

█ This brings us to the consideration of the ruling of the Court of Appeals that the trial judge erroneously refused plaintiffs permission to amend their declarations by a count charging negligence in the violation of the city ordinance. This ordinance is as follows:

"All railroad companies owning and operating the same (cars drawn by locomotives) within the corporate limits of the City of Nashville shall, and they are hereby required to keep a flagman, day and night, at all points where said railroads cross any streets on a grade with said street, lane or alley, within the corporate limits of the city."

The trial judge declined to permit this amendment because he was of opinion that the ordinance was invalid. Doubtless His Honor was influence by the decision of this court in *Louisville & Nashville R. Co.* v. *John Hoehn,* unreported, December term, 1908. In that case this court held an ordinance, practically identical with the one before us, unreasonable and void. Notwithstanding this decision, the same ordinance appears to have been reenacted by the city in 1917. In *Louisville & Nashville R. Co.* v. *Hoehn, supra,* the ordinance was invoked as applicable to the failure of the railroad company to maintain a flagman at a little used crossing of one of its switch tracks and an alley, and this court was of opinion that the enforcement of the ordinance at such place would be an unreasonable requirement and lack due process.

The crossing of defendant's track and the Murfreesboro Road, where this accident occurred, is one of the

busiest crossings in the State. The proof shows that between 5,000 and 6,000 automobiles daily pass over this crossing, as well as a number of trains each day.

In *Nashville, C. & S. L. Ry.* v. *Baker,* 167 Tenn., 470, 71 S. W. (2d), 678, this court recognized the proposition that municipal ordinances might, as applied to particular circumstances, be unreasonable and void, but as applied to other circumstances might be valid and enforceable. We were unwilling to extend this rule to statutes but on appeal, the Supreme Court of the United States held that we were mistaken and that a statute might be valid as to one set of facts and invalid as to another. This case is reported as *Nashville, C. & St. L. Ry.* v. *Walters* in 294 U. S., 405, 55 S. Ct., 486, 79 L. Ed., 949.

In *Nashville, C. & St. L. Ry.* v. *White,* 158 Tenn., 407, 15 S. W. (2d), 1, we sustained the validity of a Memphis ordinance quite similar to the one here under consideration, as applied to a busy crossing in the former city.

So upon the foregoing authority, we must hold that the ordinance of the City of Nashville as to flagmen and railroad crossings is not invalid as applied to a busy crossing, such as the one with which we here deal, during busy hours.

The refusal on the part of the trial judge to permit the amendment of the declarations was not an exercise of discretion on his part. He expressly stated that he refused to permit the amendment because he regarded the ordinance as invalid, and in this, under the ruling of the Supreme Court, we are constrained to say that he erred.

The result is that the judgment of the Court of Appeals will be modified, the judgment below reversed, and the case remanded for a new trial upon the common law counts of the declarations with permission to the plain-

tiffs to amend their declarations as heretofore indicated. The costs of appeal will be divided. The costs below will await the outcome.