220 F.2d 90
 LOUISVILLE AND NASHVILLE RAILROAD COMPANY, a Corporation, Appellant,
v.
Floyd FARMER, Administrator of the Estate of Donald Lewis
Farmer, Deceased, Appellee.
LOUISVILLE AND NASHVILLE RAILROAD COMPANY, a Corporation, Appellant,
v.
Willie FARMER, Administrator of the Estate of Thomas Donald
Farmer, Deceased, Appellee.
 Nos. 12146, 12147.
 United States Court of Appeals, Sixth Circuit.
 March 2, 1955.
 
 David M. Keeble, Nashville, Tenn. (John J. Hooker, Walker, Hooker, Keeble, Dodson & Harris, Nashville, Tenn., Charles Willett, Springfield, Tenn., on the brief), for appellant.
 Fyke Farmer, Nashville, Tenn., for appellees.
 Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.
 MARTIN, Circuit Judge.
 
 
 1
 The appeals by the Louisville and Nashville Railroad Company in these two cases (consolidated for trial in the district court) are from judgments entered on jury verdicts. The jury awarded $30,000 damages to each appellee for the death of his intestate. The causes of action arose out of the same accident in which an automobile driven by Thomas Donald Farmer and occupied, also, by his nephew of nearly the same age, Donald Lewis Farmer, and three others, collided with a fast passenger train belonging to appellant in Springfield, Tennessee, where the railroad company's tracks intersect Main Street, which is both a state highway and a United States highway. Both Farmer boys lost their lives in the accident.
 
 
 2
 The original complaint and the amendments thereto in each case charged appellant with the violation of the Railroad Precautions Act of Tennessee, section 2628(4) of the Code of Tennessee, with the violation of the speed ordinance of the City of Springfield, and with common law negligence. After all the evidence in the case had been received, the attorney for appellees abandoned his position based on common law negligence, following the statement of the trial judge that he was inclined to think appellees' intestates had been guilty of contributory negligence under the common law. This left for decision the issues of violation of the statute and of the city ordinance of Springfield.
 
 
 3
 The Tennessee Railroad Precautions Act, section 2628(4) of the Code of Tennessee, provides: 'Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.'
 
 
 4
 The pertinent city ordinance provides that it shall be unlawful for any railroad company to run, pull, or push its trains, cars, or engines at a greater speed than thirty miles an hour within the limits of the boundaries of Springfield, Tennessee.
 
 
 5
 Appellant urges that the trial court should have granted its motions for directed verdicts and should have dismissed the complaints in so far as they were based on the alleged violation of section 2628(4) of the Tennessee Code. Conceding the absolutism of the statute, if violated, appellant points out that appearance of an obstruction upon the road means, by interpretations of the statute by the Supreme Court of Tennessee, appearance on the railroad track, or so near thereto as to be within striking distance of the train; and that, unless and until such situation exists, the case must be decided upon common law principles and not under the provisions of section 2628(4). This proposition seems well established by the following Tennessee authorities: Gaines v. Tennessee Cent. R. Co., 175 Tenn. 389, 393, 135 S.W.2d 441; Tennessee Cent. Railroad Co. v. Binkley, 127 Tenn. 77, 153 S.W. 59; Chesapeake & N. Ry. v. Crews, 118 Tenn. 52, 99 S.W. 368; Jones v. Louisville & Nashville R.R., 192 Tenn. 570, 574, 241 S.W.2d 572. See also opinions of this court construing the Tennessee statute in consonance with appellant's interpretation: Rogers v. Cincinnati, N.O. & T.P. Ry. Co., 6 Cir., 136 F. 573 (opinion by Judge Lurton, at one time Chief Justice of Tennessee); Curtis v. Louisville & N.R. Co., 6 Cir., 232 F. 109, 110; Cincinnati, N.O. & T.R. Co. v. Galloway, 6 Cir., 59 F.2d 664, 666.
 
 
 6
 The two deceased Farmer boys were respectively 18 and 19 years old. One of them, Thomas Donald Farmer, was driving the automobile at the time of the accident; the other, Donald Lewis Farmer, was sitting next to him on the front seat with another boy, Bobby Richards, on his right. Two other youngsters of about the same age, Herschel Crawford and Ray Baker, were on the back seat of the car. The party was driving around in Springfield after midnight. Of the three who survived the accident, one, Herschel Crawford, was called as a witness by the appellees; another, Ray Baker, was called by appellant; and the third Bobby Richards, was put on the stand by appellees but testified that he did not know what had happened and could not remember being in the accident.
 
 
 7
 At the railroad crossing on Main Street in Springfield, there is a main track as well as a sidetrack, the latter being nearest the approach from which the Farmer automobile came. The view of the operator of a motor vehicle driving in the direction in which the Farmer car was proceeding is partially obstructed by a building at the northeast corner of the crossing. An automobile would necessarily have to be driven on to the sidetrack before its driver could see a train on the main track if a train were approaching from the direction in which appellant's train was coming at the time of the accident. It is also true that the engineer and the fireman on such locomotive could not see an automobile approaching the crossing from the direction in which the Farmer car was being driven, unless that vehicle had proceeded far enough to be on the sidetrack.
 
 
 8
 Joe Thorpe and Roy Ashbranner, two city policemen at Springfield, had their police car parked near the railroad crossing and were eyewitnesses to the accident. Thorpe was standing in front of the police car facing the approaching train. He stated that he could see up the track for a mile or more. He saw the automobile in which the boys were riding approach the railroad track. He said that another car, probably 500 or 600 feet ahead of the Farmer car, had passed over the crossing. The witness described the warning signal at the crossing as having 'red lights on it and bells on both sides of the track.' He stated that the first car crossing the tracks-- that of Odell Poole-- had not stopped before crossing, although the crossing signal was operating at the time. He estimated the distance of the train from the crossing at the time Poole's car went over it at 'something around two thousand feet up the track.' The car in which the boys were riding was not coming very fast, but at a 'normal rate of speed.' The witness narrated that, as the Farmer automobile came up to the track, the bell of the approaching engine was ringing, the whistle was blowing, and the red lights were flashing. He testified that the automobile came 'almost to a stop in something like nine or ten feet from the main line track' on the farthest rail of the sidetrack next to the main line. He said that the vehicle 'hesitated' there for a second or so and then lunged all at once and was hit by the train. Thorpe stated that he was standing about 55 feet from the point of collision. He estimated the speed of the train at the time of impact at around 50 miles per hour. His estimate of speed was doubtless accepted by the jury as of more than ordinary value for the reason that he had formerly been employed as fireman on a railroad engine.
 
 
 9
 The other police officer, Ashbranner, testified that as the boys' automobile came toward the crossing it did not stop but merely slowed up. He estimated the speed of the train as it struck the car at about 60 miles per hour. He said that the signal lights were blinking and shining on the crossing, and that he could hear the 'train blow' when it was about half a mile away.
 
 
 10
 Odell Poole, an automobile service manager in Springfield, was another witness for the appellees. He was returning after midnight from visiting his wife who was confined in a hospital and, without stopping, he had passed over the railroad crossing in front of appellant's Georgian train when it looked as if the train was right in his 'face,' so near that it had frightened him. He testified that, before crossing the railroad tracks, he saw in the mirror of his automobile the lights of a car so close behind him that he didn't know whether to stop, or to try to get across the tracks; that he had made a 'quick thinking decision' to attempt to make it across.
 
 
 11
 Herschel Crawford, testified that he had been picked up by the Farmer boys in front of a restaurant in Springfield when offered a ride home. He was seated on the back seat of the automobile with Ray Baker. He said that they were traveling down Main Street and had pulled up at a crossing where the automobile was stopped; and that he saw the 'flicker lights about that time.' He said that Thomas Farmer, who was driving the automobile, 'pulled it down in low gear and started again and that's the last thing I remember.' He was knocked unconscious for a few minutes and was taken to a hospital.
 
 
 12
 The engineer on appellant's train on the night of the accident, Charles Stanfield, who had worked as an engineer for forty-seven years and had been retired prior to trial of these cases, testified that, as his engine approached the Main Street crossing in Springfield, he was operating two headlights, one stationary and the other oscillating; that the engine's whistle was blowing and the bell was ringing as the train went into the crossing. He estimated his speed at that time as about 30 miles an hour. Stanfield said that his fireman had been sitting down, but that when they 'got close to the crossing' and he began to blow the whistle, the fireman got up and was standing in the middle of the cab. The engineer swore that, as he approached the crossing, he was looking straight ahead; and that the first time he saw the automobile was at the moment of collision. He had not applied the service brakes as his train approached the crossing, but did so after the impact. On cross-examination, he explained that he had not put on his emergency brakes for the reason that there was no use in doing so after the accident had happened. He stated that he did not see the Poole automobile pass over the tracks in front of him-- an indication that he was not very keenly on the lookout. He said: '* * * We don't pay any attention when we are ten or twelve car lengths from a crossing where there is no danger of hitting one. He may have went over and I did not pay much attention to him.'
 
 
 13
 The fireman, G. C. Baker, testified that the engineer had applied the brakes and slowed the train down after they reached the city limits of Springfield and that the train was running at a speed of about thirty miles per hour before the Main Street crossing was reached; that the automatic bell was sounding; and that he, himself, was blowing the horn, or whistle. He said that he was looking straight ahead and didn't see any automobile but did see the crossing lights flashing. The judge asked him if, after he had seen the crossing lights flashing, he observed an automobile run across in front of his train. He replied emphatically: 'No sir, I didn't see any automobile. If there had been one went across there, I would have saw it, too.' The witness declared that the Farmer automobile never got on the tracks in front of the train, but hit the side of the engine. Apparently he was not very attentive as a lookout. If he had been, it would seem likely that he could have seen the Poole automobile as it crossed the tracks in front of the train. He asserted that he did not see the Farmer automobile roll up on the sidetrack and stop, although he was standing up in front, looking straight down the track.
 
 
 14
 The testimony of the train conductor was of only slight significance. He stated that, as the train was approaching Springfield, he felt the brakes go on and that the speed of the train in consequence was reduced to approximately one half of its rate.
 
 
 15
 A signal maintenance man for the railroad company testified that the crossing signal at the point of accident begins operating automatically when a train reaches a point 2,041 feet from the crossing.
 
 
 16
 Ray Baker, a youth of nineteen years, was called to the stand as a witness for appellant. He had been picked up in front of a poolroom in Springfield by the boys in the Farmer automobile and was sitting on the back seat. He testified that, as they came to the railroad crossing, they 'were not going too fast.' He saw Officer Joe Thorpe standing in front of the police car and observed that the signal lights at the crossing were blinking. The automobile in which he was riding stopped at the crossing, but he did not know 'how far it was from the track.' The witness could not place the location of the automobile on the sidetrack. He stated that the Farmer boy who was sitting in the middle on the front seat (Donald Lewis Farmer) and Bobby Richards exclaimed simultaneously to the Farmer boy who was driving the car: 'Go ahead.' The witness said that 'just seconds later' the car 'just jumped'; and he then exclaimed, 'Hold it.' He said that the train 'looked like it was coming pretty fast' when the collision occurred. He was not knocked unconscious or seriously hurt. The railroad company had settled his claim for one hundred dollars, according to his testimony.
 
 
 17
 Herschel Crawford, called by appellees in rebuttal, testified that he did not hear Donald Farmer, Bobby Richards, or anyone else, tell Thomas Farmer to 'go ahead'; nor did he hear Ray Baker say 'hold it.' He also contradicted the testimony of Ray Baker in other aspects. Obviously, the jury did not believe that young Baker was a credible witness.
 
 
 18
 We shall not pause long to reject the contention of appellant that the trial court should 'have sustained the defendant's motion for a directed verdict and dismissed the complaint based on the speed ordinance of the City of Springfield.' The two policemen, Thorpe and Ashbranner, testified that appellant's train, as it came into the Main Street crossing at the time of the accident, was traveling at a speed in excess of the thirty-mile limit permitted by the city ordinance. Thorpe estimated the speed of the train at fifty miles an hour; and Ashbranner estimated the speed at sixty miles an hour. It was, of course, necessary that appellees show that the city ordinance was violated and that such violation was the proximate cause of the accident; otherwise, there could be no recovery under the ordinance. Memphis St. Ry. Co. v. Haynes, 112 Tenn. 712, 81 S.W. 374; American Nat. Bank v. Wolfe, 22 Tenn.App. 642, 650, 125 S.W.2d 193. But proximate contributory negligence of a plaintiff will defeat his recovery, though the negligence attributed to a defendant consists in the violation of an ordinance. McCampbell v. Central of Georgia Ry. Co., 194 Tenn. 594, 599, 253 S.W.2d 763. Remote contributory negligence goes in mitigation of damages. Bejach v. Colby, 141 Tenn. 686, 691-692, 214 S.W. 869; Memphis St. Ry. Co. v. Haynes, supra.
 
 
 19
 Under the evidence here, the issues of whether the city ordinance of Springfield was violated by the appellant and, if so, whether such violation was the proximate cause of the accident, were plainly for the jury, as were the issues of whether appellees' intestates respectively had been guilty of either proximate or remote contributory negligence. Such issues should have been submitted to the jury under correct and appropriate instructions. The court's action in this respect will be discussed later in the opinion. The trial judge was clearly right in denying appellant's motion for a directed verdict in respect of its alleged violation of the city ordinance.
 
 
 20
 In the event of our rejection of its insistence that these cases should be dismissed, appellant says that the judgment in each case should be reversed and the causes remanded for a new trial upon several grounds: namely, that the trial court erred in granting appellees' request for special instructions with respect to section 2628(4) and also in respect of the theory of appellees based on a violation of the Springfield speed ordinance; that the trial court erred in charging the jury concerning punitive damages and in failing to grant appellant's special request for instructions concerning section 2628(4) and its special request for instructions pertaining to the affirmative duty of a guest to exercise care for his own safety; that the court erred in submitting to the jury the alleged expert testimony of Sidney Acker, who was not duly qualified as an expert on the subject matter concerning which he testified; and, finally, that the action of the court in refusing to set aside the verdicts as excessive was erroneous.
 
 
 21
 Although the record shows that the attorneys for appellant, in lengthy argument and extended colloquy with the court, made plain the basis of their objections to certain views of the Tennessee law as ultimately expressed by the trial judge and incorporated into his charge by adoption of the special requests submitted by appellees and by his failure to adopt appellant's special requests, the record fails to disclose that after delivery of the charge formal exception was noted by appellant to the charge of the court or to its action in granting or refusing the special requests. At the outset of the discussion of the special requests, appellant did state objection to all appellees' special requests, except those numbered 2, 4 and 16. If these stated objections be treated as exceptions to the charge, the errors alleged to have been committed by the trial court are adequately preserved for consideration on appeal.
 
 
 22
 In Transamerican Freight Lines v. Universal Die Casting Co., 6 Cir., 192 F.2d 931, 932, we said: 'While the plaintiff now contends that the charge in various particulars is misleading and erroneous, no exception was taken thereto. All such objections are therefore waived because not made in compliance with Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. which requires a party objecting to the giving, or the failure to give an instruction, to make such objection before the jury retires, 'stating distinctly the matter to which he objects and the grounds of his objection." In the context of the instant case, we think the underlying purpose of Rule 51 was adequately met. Appellant put the trial court in full possession of the reasons why the court's interpretation of the applicable Tennessee law was regarded to be erroneous in the aspects pointed out, and supporting authorities were presented.
 
 
 23
 There are certain conflicting statements in the judge's charge which might have confused the jury. The following paragraph was, in our judgment, an erroneous statement of the law of Tennessee: 'Now, at the special request of the plaintiff the Court charges you that the duties of those in charge of a train to observe the requirements of the Tennessee Railroad Precaution Statute-- that's the statute that I have just read you (section 2628(4))-- are not confined to the very time the accident occurs. They commence when an obstruction appears on the road, and the road, in contemplation of the statute, is not merely what is strictly called the railroad bed or the track, but also includes public approaches thereto, and it is the duty of the lookout to view the whole road within the orbit of his vision.' (Emphasis supplied.)
 
 
 24
 The last portion of the above charge was given in the exact language of the opinion of this court in Majestic v. Louisville & N.R. Co., 6 Cir., 147 F.2d 621, 624, 625, written in 1945 by Judge Hamilton upon the authority of Nashville & Chattanooga R. Co. v. Anthony, 69 Tenn. 516, 520. The foregoing exact language of the charge was also approved as good law by this court in Louisville & N.R. Co. v. Tucker, 6 Cir., 211 F.2d 325, 330; but, on petition for rehearing in the last-cited case, Louisville & N.R. Co. v. Tucker, 6 Cir., 215 F.2d 227, a per curiam opinion ordered the language to be stricken and deleted from the former opinion of the court, for the reason that it did not state properly existing Tennessee law as explained in the Tennessee decisions subsequent to the Anthony case, supra, upon which it was originally based. The following authorities were cited as requiring the deletion: Louisville, N. & G.S.R. Co. v. Reidmond, 79 Tenn. 205, 210, 211; Louisville & N.R. Co. v. Frakes, 11 Tenn.App. 593, 614; Gaines v. Tennessee Cent. Ry. Co., 175 Tenn. 389, 393, 135 S.W.2d 441; Cincinnati, N.O. & T.P.R. Co. v. Galloway, 6 Cir., 59 F.2d 664, 666. In the Gaines case, supra (175 Tenn. 389, 135 S.W.2d 442), Chief Justice Green of the Tennessee Supreme Court said: 'As ruled in many decisions of this court, appearance on the road means appearance on the track in front of the moving train, or so near that the object will be struck by the moving train. Tennessee Central R. Co. v. Binkley, 127 Tenn. 77, 153 S.W. 59; Chesapeake & N. Ry. v. Crews, 118 Tenn. 52, 99 S.W. 368; Nashville, C. & St. L.R. Co. v. Seaborn, 85 Tenn. 391, 4 S.W. 661.'
 
 
 25
 Later in the charge in the case at bar, the judge correctly instructed the jury in the following language: 'The word 'obstruction' in the statute means that which may obstruct or hinder the free and safe passage of the train or that which may receive an injury or damage if struck by the train, as in the case of an automobile on the road or near enough to the railroad to be within striking distance of the train. He then stated: 'If you find that the Farmer automobile appeared on the road as an obstruction as I have defined the word, then the burden of proof rests upon the railroad company to show affirmatively that the required statutory precautions were duly observed.'
 
 
 26
 The court had quoted the language of the Tennessee Precautions Statute (section 2628(4)) and correctly charged that, where a violation of its requirements by a defendant railroad company is shown, the contributory negligence of the plaintiff, though the direct and proximate cause of his injury, would not bar his recovery against the carrier; but if the contributory negligence of the plaintiff were shown by a preponderance of the evidence to be one of the proximate causes of the accident, such contributory negligence would go only in mitigation of damages. The jury properly was told that the statute contemplates an efficient and watchful, and not merely a perfunctory lookout; that a lookout failing to see what due care would have revealed would not properly be discharging his duty; and that an obstruction might appear on the road which, under the statute, would require the train crew to put down the brakes and employ every possible means to stop the train and prevent an accident, even though the obstruction was not seen, but should have been seen by an observant lookout.
 
 
 27
 The judge charged specifically: 'It was shown in evidence that the Farmer automobile was following immediately behind an automobile driven by Odell Poole, going in the same direction on Main Street; that the Poole automobile crossed the railroad tracks in front of the approaching Georgian train after the warning signal at the crossing had been set in operation, and at a moment when the train was very close upon him; that the Farmer automobile behind Poole reached the side track and came to a stop, or practically to a stop, before proceeding towards the main track. While both the engineer and the fireman on the train testified that they were on the lookout ahead when the train approached the Main Street crossing, neither of them, according to their testimony, saw the Poole automobile and did not see the Farmer automobile until the collision occurred. If you find that an observant lookout should have disclosed to the engineer or the fireman the appearance of the Poole automobile upon the road, you would be authorized to infer from the failure of the engineer and fireman to see it that the lookout was negligent and heedless, and therefore there was a failure on the part of the railroad to comply with the requirements of the statute that it shall keep the engineer, fireman or some other person upon the locomotive always upon the lookout ahead.'
 
 
 28
 The jurors were further instructed that, although the burden of the statute would be lifted when the railroad company shows that it did all that the Railroad Precautions Statute required it to do and that the accident was unavoidable, liability would still exist if the negligent conduct of the railroad engineer deprived the carrier of the power to comply with the requirements of the statute.
 
 
 29
 The judge pointed out that in such circumstances the carrier could not rely upon the impossibility of observance of the statutory precautions. He instructed the jury that the time available to the engineer in which to observe the statutory requirements would depend to a great extent upon the speed at which the train was moving. The jury was charged specifically: 'If you find that the defendant's Georgian Train approached the Main Street crossing in Springfield and that it was a much used crossing whereon the presence of persons or automobiles might reasonably be anticipated, at a rate of speed which the engineer knew, or should have known, would render it impossible to comply with the requirements of the statute if an obstruction appeared on the crossing the non-observance of the statutory precautions would not be excused.
 
 
 30
 'The plaintiffs contend that the Georgian Train was moving at a speed of fifty to sixty miles an hour across Main Street in the City of Springfield and collided with the Farmer automobile, and there is evidence to support this contention. If you believe this evidence and find that this speed made it impossible for the engineer to put down the brakes, or take any other possible means to stop the train before the collision, then the defendant would be liable under the Railroad Precautions Statute.'
 
 
 31
 We have quoted at considerable length from the charge of the court, for the reason that despite the error in the paragraph which we have already pointed out, the charge as a whole in relation to the Tennessee Railroad Precautions Act conformed to Tennessee law adequately to explain away the formerly approved use in the erroneous paragraph of the expression 'it is the duty of the lookout to view the whole road within the orbit of his vision.' We are not in accord with the tendency which we have observed here and there to lift, as a ground for reversal, a single inconsistent and incorrect paragraph from the context of a well-rounded charge, correct when viewed in entirety. We must consider whether, upon the whole, the charge of present concern gave appropriate and proper instructions upon applicable law in such fashion as would be unmistakably understood by the jury. Applying this standard, though there is an ambiguity, we find no reversible error in the subject matter of the charge pertaining to the applicability and effect of section 2628(4) of the Code of Tennessee.
 
 
 32
 In addition to conforming generally to the authorities heretofore cited, we think the court's charge also was in consonance with the interpretation of Tennessee Code section 2628(4) in Callaway v. Christison, 6 Cir., 148 F.2d 303. See also Graves v. Illinois Central R. Co., 126 Tenn. 148, 148 S.W. 239; Illinois Cent. R. Co. v. Sigler, 6 Cir., 122 F.2d 279, 284; Nashville, C. & St. Louis Ry. v. Smith, 33 Tenn.App. 45, 52, 228 S.W.2d 495, and cases therein cited; So. Ry. Co. v. Harris, 9 Tenn.App. 589; and Illinois Central R. Co. v. Davis, 104 Tenn. 442, 450, 58 S.W. 296.
 
 
 33
 We come now to a paragraph of the court's charge which we think constitutes reversible error. The jury was instructed: 'If you find that due to the operation of the Georgian Train at a speed in excess of the limit of thirty miles per hour prescribed by the Ordinance of the City of Springfield when the train approached the Main Street crossing, the engineer failed to apply the brakes before the accident occurred, the defendant would be liable irrespective of whether such violation of the City Ordinance was the proximate cause of the accident.'
 
 
 34
 This instruction was confusing, in that it mixed up liability under the state statute with liability for violation of the city ordinance. To place liability upon the railroad company it was not necessary to show that violation of the state statute was the proximate cause of the accident, but only that the statute had been violated; but, in order to fix liability upon the carrier for a violation of the ordinance of the City of Springfield limiting speed at the point of collision to thirty miles an hour, it was necessary that such violation be shown to have been the proximate cause of the accident. The instruction apparently related to liability under the statute and not to liability for violation of the city ordinance. Nowhere in the court's charge was the jury told that violation of the city speed ordinance stood on a different footing from violation of the state statute with respect to proximate cause. It is settled law in Tennessee that the violation of a city ordinance is negligence per se and will render the violator liable in damages to an injured party if such violation was the proximate cause of the injury. See Memphis St. R. Co. v. Haynes, 112 Tenn. 712, 81 S.W. 374, and cases there cited; American Nat. Bank v. Wolfe, 22 Tenn.App. 642, 650, 125 S.W.2d 193. Cf. Chattanooga Ry. & Light Co. v. Bettis, 139 Tenn. 332, 336, 337, 202 S.W. 70.
 
 
 35
 After the jury had been instructed, appellant's attorney directed the judge's attention to the fact that, in connection with the alleged violation of the city ordinance of Springfield, contributory negligence would be a complete bar. The court interrupted the attorney to say: 'Yes, contributory negligence, so far as the violation of the City Ordinance is concerned, would be a bar to recovery, but as the Court has charged you, it would not be a bar to recovery if you find that there was a violation of the state statute.' This statement to the jury did not clarify the confusing language used in the erroneous paragraph which has been discussed. The court gave no instruction to the effect that, in order to render the defendant liable for violation of the speed ordinance of Springfield, such violation must be shown by a preponderance of the evidence and must be shown to have been the proximate cause of the accident. A charge to such effect was vital.
 
 
 36
 The jury rendered a general verdict, from which it cannot be determined whether it found for appellees on the theory based upon alleged violation by appellant of section 2628(4) of the Code of Tennessee, or on appellees' theory based on the alleged violation of the Springfield city ordinance. Accordingly, our only recourse is to grant a new trial, at which the court will correctly charge the jury in compliance with this opinion. The erroneous charge, stating that 'it is the duty of the lookout to view the whole road within the orbit of vision,' will be omitted, as will be the paragraph of the charge which has been declared to constitute reversible error.
 
 
 37
 We direct also that the court eliminate the paragraphs of its charge relating to punitive damages, inasmuch as the record under review does not, in our judgment, justify any conclusion that the train crew was guilty of wanton negligence, or of conduct raising a presumption of their conscious indifference to consequences.
 
 
 38
 The court erred in admitting the conclusions of the alleged expert, Sidney Acker, for the reason that there was insufficient evidentiary basis for the expressions of opinion to which he gave vent. His calculations had been figured on the assumption of a 'level track,' while the evidence disclosed that the track was down-grade at the locale of the accident. His qualifications as an expert on the subject matter were, at most, doubtful. The testimony of Acker, moreover, was theoretical, remote and speculative.
 
 
 39
 In our judgment, the court erred in denying appellant's Special Request to Charge, numbered 9: 'One occupying a vehicle as a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself of the exercise of reasonable precautions for his own safety, and this obligation is a continuing personal one.' This proffered instruction was copied literally from the opinion of the Supreme Court of Tennessee in Stem v. Nashville Interurban Ry., 142 Tenn. 494, 508, 221 S.W. 192. The identical language was also quoted in Tennessee Cent. Ry. Co. v. Schutt, 2 Tenn.App. 514, 519. The rejected instruction was material, in view of the fact that Ray Baker, an occupant of the automobile at the time of the accident, had testified that Donald Farmer who was sitting next to his relative, the driver of the automobile, had said 'go ahead' when the car came to a stop at the crossing. This statement was controverted by another occupant of the car, Herschel Crawford, thereby raising a fact issue. Accordingly, appellant was clearly entitled to have the foregoing instruction given to the jury. See also Southern Ry. Co. v. Harris, 9 Tenn.App. 589, 593.
 
 
 40
 The refusal of the trial court to give the jury the following special instruction submitted by appellant is assigned as error: 'If you find, from a preponderance of the evidence, that the appearance of the automobile upon the railroad track was practically simultaneous with the collision, and no opportunity was afforded the crew of the defendant Railroad's train to comply with all the precautions required by Section 2628, Subsection (4) of the Tennessee Code, the said Statute is not applicable, and you should find for the defendant with respect to that ground of the complaints based on said section of the Statute.' This requested instruction, as stated by the court, was denied 'for the reason this request limits the obstruction to the track instead of the road.'
 
 
 41
 We think the reason given for the denial of the instruction was hypertechnical. The judge should have given the requested instruction, with the substitution of the word 'road' for the word 'track.' The Supreme Court of Tennessee, itself, has sometimes used the word 'track' where the word 'road' was clearly intended. See, for example, Jones v. Louisville & Nashville R.R., 192 Tenn. 570, 574, 241 S.W.2d 572. The accuracy of the statement embraced in the rejected request is supported by Tennessee authorities. Jones v. Louisville & Nashville R.R., supra; Gaines v. Tennessee Cent. Ry. Co., 175 Tenn. 389, 393, 135 S.W.2d 441; East Tennessee & V.R. Co. v. Swaney, 73 Tenn. 119, 123. Cf. Curtis v. Louisville & N.R. Co., 6 Cir., 232 F. 109.
 
 
 42
 In Alabama Great Southern R. Co. v. Brookshire, 6 Cir., 166 F.2d 278, 281, 1 A.L.R.2d 612, we said: 'No opportunity was afforded appellant for observance of the precautions required by that portion of section 2628(4) of the Tennessee Code which exacts affirmative duties of the trainmen 'when any * * * obstruction appears upon the road.' The time of the appearance of the truck upon the railroad track was practically simultaneous with the collision. No liability of the defendant may be grounded, as the trial court properly held, upon that portion of the statute (citing half a dozen Tennessee cases).'
 
 
 43
 Inasmuch as these cases are being remanded for new trial, at which the evidence may not be materially the same as was adduced at the trial under review, we think it unnecessary to pass upon the question of whether on the present record there was sufficient evidence to present an issue of liability under the Tennessee Railroad Precautions Act.
 
 
 44
 The judgment of the district court in each case is reversed; and the causes are remanded for a new trial.