**OVERTON SQUARE, INC. et al.,
Petitioners-Defendants,**

v.

**Loretta A. BONE, Respondent-Plaintiff.**

Supreme Court of Tennessee.

Feb. 12, 1979.

---

Richard Glassman, Memphis, for petitioners-defendants.

Walter Buford, James L. Hutter, Memphis, for respondent-plaintiff.

## OPINION

HARBISON, Justice.

Petitioners are the owners and operators of a restaurant in Memphis. Respondent was a patron of the restaurant on January 28, 1975 and sustained injuries when she fell from the back entry of the restaurant, down a flight of six steps onto a paved parking lot.

The steps were constructed of brick with iron handrailings along each side and were one hundred nineteen and one-half inches wide. Provisions of the city building code required stairways exceeding eighty-eight inches in width to have an intermediate handrail, and petitioners' steps were not so equipped. The respondent fell from the top of the steps on the westerly side diagonally across them, terminating her fall at a point opposite the easterly foot of the steps.

Although various acts of negligence on the part of the petitioners were charged in the complaint and in the opening statement of counsel, respondent was unable to explain the initial cause of her fall. Apparently she simply lost her balance when she turned from talking with an employee of the restaurant. She moved to her right, intending to re-enter the back door. The steps and the landing area at the top of them, adjacent to the back door, were crowded with patrons, but there is no evidence that the respondent was jostled by another patron. Nor is there any proof that a foreign substance on the floor of the landing or that any other act or omission of the petitioners, or of anyone for whom they might be responsible, caused or contributed to respondent's initial loss of her balance. She was wearing shoes called "clogs," and it is possible that these may have been a factor in causing her to slip.

On the other hand, petitioners were admittedly guilty of negligence in not having the type of handrails required by the city building code. The question presented, therefore, is whether or not the absence of a proper handrail was a proximate causative factor in the injuries which respondent sustained—or, more properly, whether the trier of fact could reasonably so determine.

At the conclusion of the evidence of respondent, the trial court directed a verdict in favor of the petitioners, holding that there was insufficient proof of causative negligence to take the case to the jury. The Court of Appeals reversed, holding that the respondent was within the class of persons which the ordinance was designed to protect and that reasonable minds might differ upon the question of whether the absence of the handrail was a proximate cause of the resulting injuries. In the course of her fall, according to respondent, she virtually turned a cartwheel, landing violently on both feet, fracturing one ankle and either fracturing or severely spraining the other.

Petitioners contend that it is purely a matter of speculation whether the presence of a handrail down the center of the steps would have broken the fall of respondent and prevented the injuries. They also contend that respondent, had she struck such a handrail, might have been injured just as seriously as she in fact was. They admit that the purpose of the ordinance requiring a center handrail is to assist persons in negotiating the steps safely, to prevent one from losing his balance, and to provide a means of support. Basically, however, it is their insistence that such a handrail is not designed to break the descent of a person falling from the landing above.

On the other hand, respondent testified that she slipped and was falling backward across the steps. The record states:

"Q. You recall specifically going straight across the steps?

A. Yes, sir, because I remember having my arms out trying to reach something.

Q. I see, and you were tumbling head over heels at that time?

A. Well, it's kind of hard to tell how you're tumbling but I was tumbling.

Q. If something had been there, you might have struck your head on it or got your arm or leg caught in it, isn't that true?

A. If something had been there, maybe I could have grabbed onto it and I wouldn't have gone all the way down the steps."

Very closely in point is the case of *American National Bank v. Wolfe*, 22 Tenn.App. 642, 125 S.W.2d 193 (1938). There the patron of a bank slipped on a flight of marble steps leading from the main banking floor into the basement. The stairs had a handrail on her right, but not on her left, although city ordinances required handrails on both sides. Plaintiff did not know what caused her initial fall, but the Court of Appeals held that the issue of whether the absence of the handrail was a proximate cause of her injury was properly submitted to the jury. The court said:

"It is shown that there was no foreign substance on the steps; it is not shown that the accident was caused by the steps being worn; the absence of the hand-rail did not cause her to slip; but she said that she fell against the wall and tried to catch to the wall but couldn't hold to the coping, as there was no hand-rail. But it is a question for the jury whether, after her feet slipped and she fell to the left side of the stairs, she could have caught the hand-rail (if there had been a hand-rail there) and stopped her fall." 23 Tenn.App. at 649, 125 S.W.2d at 197.

◼ As stated by the Court of Appeals of Kentucky in a case where a motel patron slipped on a hall floor and fell down some steps lacking a required handrail:

"With respect to causation, we do not believe that the purpose of handrails adjacent to a flight of stairs is only to prevent those falls that are caused by the presence of the stairs. The danger of injury to a person who falls at or near the head of a flight of stairs is increased by its presence. No matter where his loss of footing originates, if the fall carries him onto or into the flight of stairs he is just as much entitled to the protection of a handrail as would be the case if he had first lost his balance while on the stairs." *Whitehead v. Ramada Inns, Inc.*, 529 S.W.2d 366, 367 (Ky.1975).

Although the issue is close, we are of the opinion that reasonable minds could differ as to whether the failure of petitioners to comply with the requirements of the building code was or was not a causative factor in producing the injuries suffered by respondent, a business guest on the premises. Accordingly we affirm the judgment of the Court of Appeals, remanding the case to the trial court for a new trial. Costs incident to the appeal are taxed to petitioners. All costs in the trial court will abide the final result there.

HENRY, C. J., and COOPER and FONES, JJ., concur.

BROCK, J., dissents.

BROCK, Justice, dissenting.

I respectfully dissent from the decision and opinion of the majority in this case. I do so for two reasons, viz., (1) the plaintiff's evidence failed to establish the violation of any duty owed to her and (2) there is no evidence from which the jury could find that failure of the defendant to have the handrail required by the city code was a proximate cause of the plaintiff's injury.

The mere fact that the defendants had not installed a handrail running from top to bottom and in the center of the stairway, as required by the Memphis City Code, does not establish that the defendants violated any duty owed to the plaintiff in the circumstances of this case. In *De Haen v. Rockwood Sprinkler Co. of Massachusetts*, 258 N.Y. 350, 179 N.E. 764, 766 (1932) the great Cardozo, writing for the court, said:

"Liability is not established by a showing that, as chance would have it, a statutory

safeguard might have avoided the particular hazard out of which an accident ensued. The hazard out of which the accident ensued must have been the particular hazard or class of hazards that the statutory safeguard, in the thought and purpose of the Legislature, was intended to correct."

Applying that rule to this case, it appears to me that the purpose of the Memphis ordinance was to protect the safety of persons who purposely go up or down the steps of the stairway. I cannot believe that it was intended to protect the safety of one who ". . . simply lost her balance when she turned from talking with an employee of the restaurant . . . moved to her right, intending to re-enter the back door."[1] See Prosser on Torts, Hornbook Series, at 271 (1st ed., 1941).

In a case which is quite similar to the case at bar, Brown Hotel v. Levitt, 306 Ky. 804, 209 S.W.2d 70 (1948), the Kentucky court denied liability to a patron of the hotel who, while descending a stairway of the hotel, was accidentally struck from behind by another person who fell on the stairway, thereby knocking the plaintiff's feet out from under her and causing her to fall and suffer injuries. The theory of the plaintiff was that the defendant was negligent because it had failed to erect a guardrail up and down the center of the stairway as required by an ordinance of the City of Louisville. In denying a recovery to the plaintiff, the court said:

"It is argued by appellant that the purpose of the ordinance was limited to the protection of persons in going from the building in case of fire. We cannot agree with appellant in this argument. Obviously the purpose of the ordinance was for the safety of persons using the steps either in ingress or egress.

"But we can agree with appellant in that the particular thing that happened here was most likely not within the zone of apprehension of the ordinance. If the violation of an ordinance calling for a prescribed safeguard does not necessarily establish liability, it will be much more so if the ordinance is intended only to protect against hazards entirely different in kind to the occasion of the injury. It follows then that where a statutory command is not obeyed there is no breach of duty toward those who do not come within the zone of apprehended danger." (Emphasis added.) 209 S.W.2d at 71, 72.

Actually, the plaintiff in the Kentucky case came far closer to falling within the class of persons intended to be protected by the ordinance than does the plaintiff in the instant case because, in the Kentucky case, the plaintiff was actually descending the stairway when injured, whereas, the plaintiff at bar was making no attempt to go either up or down the stairs when injured. "In the absence of any other guide, a statute may well be assumed to cover all risks that may reasonably be anticipated as likely to follow from the violation." Prosser on Torts, supra.

Although the defendants violated their legal duty as citizens of the City of Memphis in failing to comply with the requirement of the code that a handrail be erected from top to bottom of the stairway in question, it is my view that before the violation of that ordinance may properly be held to be a breach of duty to a particular person in a tort action it must be shown that such person is one of those whom the ordinance was intended to protect, i. e., one who was purposely ascending or descending the stairway.

Although my principal disagreement with the majority is on the point just discussed, it is my further opinion that the evidence in this case fails to show that the absence of a handrail running from top to bottom of the middle of this stairway was a proximate cause of the plaintiff's injury. Her testimony is that she "cartwheeled" down the steps and landed on the ground on her feet thereby injuring both ankles. If this be true, I am unable to see that a handrail erected in the fashion required by the Memphis City Code would have been of any assistance to

---

1. Excerpt from plaintiff's complaint.

her. Handrails running down the center of a stairway are designed for holding onto by one who is ascending or descending a stairway, not to protect people from falling off porches.

I would reverse the judgment of the Court of Appeals and affirm that of the trial court.