IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2024 Session

## MICHAEL DARREN FRANZ, ET AL. v. OSCAR FUNES

**Appeal from the Circuit Court for Blount County**
**No. L-20744     David Reed Duggan, Judge**

---

### No. E2023-01256-COA-R3-CV

---

This appeal concerns premises liability. Michael Darren Franz ("Mr. Franz") and his wife Pamela Franz ("Plaintiffs," collectively) sued Oscar Funes ("Defendant") in the Circuit Court for Blount County ("the Trial Court") for injuries Mr. Franz sustained from falling down the stairs at a residential rental property built and owned by Defendant. The stairs, which led from the first floor to the second floor, lacked a code-compliant handrail going the length of the stairs. Defendant filed a motion for summary judgment, which the Trial Court granted. Plaintiffs appeal. We conclude that the reasonably foreseeable probability and gravity of harm to Plaintiffs, namely serious injury or death from falling down the stairs, outweighed the burden on Defendant to engage in alternative conduct which would have prevented a risk of harm, such as extending the railing to the top of the stairs. Under common law principles of negligence, as well as negligence per se from the code violation, Defendant owed a duty of care. In addition, genuine issues of material fact exist in this case regarding causation and comparative fault. We reverse the judgment of the Trial Court and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KRISTI M. DAVIS, J., joined.

Charmaine Nichols and Donna Keene Holt, Knoxville, Tennessee, for the appellants, Michael Darren Franz and Pamela Franz.

Broderick L. Young and Bridget J. Pyman, Knoxville, Tennessee, for the appellee, Oscar Funes.

## OPINION

## Background

In 2020, Plaintiffs rented a two-story townhouse in Caryville, Tennessee, built and owned by Defendant. The townhouse had a stairway connecting the first floor to the second floor. A handrail extended part-way up one side of the stairway, but not all the way to the top. Toward the top of the stairs, there was only wall on either side. On June 15, 2020, Mr. Franz fell while descending the stairs. In June 2021, Plaintiffs sued Defendant in the Trial Court for negligence and negligence per se for injuries Mr. Franz sustained in the fall. Plaintiffs alleged, in part:

> Plaintiffs aver and would show that [the] 2009 International Residential Code was adopted in Campbell County Tennessee prior to the building of the subject unit and was in effect at the time of the Plaintiff's fall on June 15, 2020 injuries. Likewise the current state building code was also in effect. The non-compliant deviations from industry standards were the proximate cause of Plaintiff's injuries. See structural engineer expert Todd Duncan's report attached hereto and made a part hereof the Complaint as **Exhibit 2**. Plaintiffs aver that the violation of these code requirements constitute negligence *per se* on behalf of the Defendant. Plaintiffs aver that the failure of the Defendant to design, construct and maintain the stairway as is applicable to the building code standards was a substantial contributing factor in the proximate causation of the Plaintiff Michael Darren Franz's fall and injuries. Further, the Plaintiffs aver and would show that if the stairway had been constructed in a proper manner conforming to the applicable building code in effect at the time of the Plaintiff's fall, a handrail would have been available to tenants, and in particular, the Plaintiff herein, from the top to the bottom of the stairway. If the handrail had been available from the top, the Plaintiff would have been able to regain his balance and not have fallen.

A report by structural engineer Todd E. Duncan ("Duncan") was attached to Plaintiffs' complaint and stated in substantial part as follows:

## Code Compliance

Based on the Google Earth historical imagery timeline, the referenced structure was constructed between October 2010 and April 2012. The following items were found to be non-compliant with the current state building code, 2009 International Residential Code (2009 IRC):

1. 2009 IRC Section R311.7.7 "*Handrails shall be provided on at least one side of each continuous run of treads or flight with four or more risers.*" There are fourteen risers on the interior stairs at the referenced structure, but no handrail along the top five risers. The absence of the handrail eliminates the occupant's ability to have the security of guidance, stabilization, pulling or assist in arresting a fall. The absence of a handrail significantly increases the hazard of ascending or descending the stairs.

2. 2009 IRC Section R311.7.7.1 "*Handrail height, measured vertically from the sloped plane adjoining the tread nosing, or finish surface of ramp slope, shall not be less than 34 inches and not more than 38 inches.*" Our measurements of the handrail along the lower nine risers found the height of the existing handrail to be 30 inches.

3. 2009 IRC Section R311.7.7.2 "*Handrails for stairways shall be continuous for the full length of the flight, from a point directly above the top riser of the flight to a point directly above the lowest riser of the flight.*" The existing handrail did not continue above the ninth riser, leaving the top five risers without a handrail.

4. 2009 IRC Section R311.7.2 "*The minimum headroom in all parts of the stairway shall not be less than 6 feet 8 inches measured vertically from the sloped line adjoining the tread nosing or from the floor surface of the landing or platform on that portion of the stairway.*" Our measurements found the headroom at the ceiling of the main floor to be a maximum of 6'-6$^{1/4}$".

## Conclusion

Based upon the noted observations and measurement, the referenced stairs are not code compliant and are considered to be hazardous. The absence of the required handrail eliminates the occupant's ability to catch and stabilize themselves in the event of an unbalance situation. Without the handrail, the expectation of a fall is extremely high. The noted conditions of the referenced stairs are considered improper and unsafe.

Defendant filed an answer in opposition, stating in part: "Defendant asserts the comparative fault of the Plaintiff Michael Darren Franz, to the extent it is shown: that [h]is fall was a result of his failure to keep a proper lookout and to look where he was going; to the extent he otherwise failed to exercise reasonable care for his own safety; to the extent he failed to see that which was there to be seen; to the extent he failed to avoid the trip/slip and fall accident; and inattention." In February 2023, Defendant filed a motion for summary judgment. Defendant asserted that Plaintiffs could establish neither duty nor causation. Attached to Defendant's statement of undisputed material facts as exhibits were parts of Mr. Franz's deposition testimony, in which Mr. Franz testified, as relevant:

-3-

Q. But you knew before the accident that there wasn't a handrail there; is that correct?
A. Yes.
Q. And despite your observation that there wasn't a handrail, you didn't say anything to Mr. Funes about it; is that correct?
A. Yes.
Q. Did you ever have any problem traversing the steps prior to your accident?
A. No.
Q. Other than there not being a handrail, did you notice any other problems having to do with the steps?
A. No.
Q. Is the stairway, is it -- would you describe it as wide or narrow?
MS. NICHOLS: Objection.
MR. YOUNG: Go ahead.
A. Kind of normal.
Q. Normal?
A. Uh-huh (Affirmative).

***

Q. Do you think you were on the third step --
A. Third or fourth.
Q. -- before you slipped?
A. Before I went down.  It happened so damn fast.
Q. Do you recall reaching for a handrail?
A. As I was going -- I tried to catch the header of -- (indicating).
Q. You're reaching out forward.  You tried to catch the head of the ceiling?
A. Yeah, the header down at the bottom.
Q. I guess that is --
A. As you go down your steps, you'll have a little header there.  I tried to catch it.
Q. And you missed that?
A. Yes.
Q. Do you recall ever reaching for the handrail?
A. I don't know what I was doing.
Q. Do you recall reaching out with your right arm to try to catch the header?
A. (Witness nods head affirmatively).
Q. You're nodding yes.
A. Yes.

Q. Would you agree that since you're reaching with your right arm for the header that you weren't reaching for a handrail?
A. Yes.

Plaintiffs filed a response in opposition to Defendant's motion for summary judgment, as well as a statement of additional material facts. As part of their opposition to Defendant's motion for summary judgment, Plaintiffs submitted an affidavit from Duncan, the structural engineer. In his affidavit, Duncan stated:

1. My name is Todd E. Duncan and I am over the age of 18.
2. I reside in Knox County, Tennessee and I am a structural engineer, licensed in the State of Tennessee. My company is called Structural Engineering Assessments, PC and a copy of my CV is attached hereto.
3. I have inspected the stairway at the subject property in this case and have rendered my opinion as to the defects with the stairway system.
4. As stated in my inspection report dated August 22, 2022, the lack of a safety handrail on the upper portion of the stairway at the subject property in the captioned case increased the risk of injury to the tenants and their visitors in the home.
5. The whole purpose of a safety handrail is to provide a means for a person to avoid losing their balance, and if they should lose their balance, to regain control or otherwise re-orient themselves. It is my opinion, based on my education and experience in the field of structural engineering, that one who loses their balance at the top of a stairway where there is no handrail, and subsequently falls to the bottom, has no opportunity to make a correction or otherwise right themselves.
6. It is also my opinion, that it is more likely than not that the lack of a handrail at the top of the stairs in the subject townhouse was a substantial factor and contributing cause of Mr. Franz falling down the stairwell to the floor below; moreover, the lack of a handrail at the top of the stairs significantly increased the distance of the fall and thereby increased the severity of his injuries.

In June 2023, the Trial Court heard Defendant's motion for summary judgment. In August 2023, the Trial Court entered its final judgment in which it granted summary judgment to Defendant. The Trial Court made the following findings of fact:

1) Plaintiffs allege that the defendant's failure to install a handrail above the staircase in the home they rented from defendant was the proximate

cause of the fall and injuries Mr. Franz alleges he sustained as a result of falling while descending the staircase.

2) Plaintiffs have specifically alleged that as Michael Franz began his descent, he suddenly felt himself losing his balance, so he reached out to grab a handrail, but instead encountered air.

3) Plaintiffs further aver that if the handrail had been available from the top of the stairway, the plaintiff would have been able to regain his balance and not have fallen.

4) Plaintiffs moved into the rental home on or about January 23, 2020.

5) Mr. Franz was aware that there was not any handrail above the staircase from the day he moved into the property, and Mr. Franz never had any issues traversing the staircase prior to the incident on June 15, 2020, which is about, not quite, but close to five months after moving into the property.

6) On or about June 15, 2020, Plaintiff, Michael Franz, claims to have fallen while descending a staircase in the house he was renting from Mr. Funes.

7) In an attempt to catch himself, plaintiff reached for the ceiling above the staircase but could not reach it.

8) Mr. Franz recalled reaching out with his right arm to catch the ceiling when he began falling.

9) Mr. Franz did not attempt to reach for a handrail in order to stop himself from falling.

10) The absence of an installed handrail was Mr. Franz' sole complaint concerning the staircase.

11) Plaintiff, Pamela Franz, did not see Mr. Franz fall.

12) The City of Caryville adopted the International Residential Building Code by 2010.

13) Plaintiff, Michael Franz, has described his fall on more than one occasion as the defendant has indicated in their statements -- the defendant's statements of fact. Plaintiff has also described his accident in his Complaint as follows: I started walking down the stairs to get a cup of coffee, lost footing at the top step and started falling fast. As I reached for something to balance or grab onto in order to slow down or stop my fall, there was nothing I could grab. Plaintiff also addressed how the fall happened in his Answers to Interrogatories. It was early in the morning, I had just woken up and gotten out of bed, I put on my house shoes and went to the bathroom, which is located to the left of the stairs. As I came out of the bathroom, I started walking down the stairs to get a cup of coffee, lost footing at the top step and started falling fast.

14) Defendant, as owner of the subject property, obtained a building permit for the construction of this structure from the City of Caryville in Campbell County on September 10, 2011.

15) Mr. Funes took no steps to familiarize himself with the building codes in Campbell County when he started building the unit, and he did not educate himself before he rented the townhouse to the Franzs.

16) Defendant conceded he had never heard of the International Residential Building Code.

17) Defendant, Funes, admits he has no knowledge of anything that plaintiff, Michael Franz, did or could have done to cause or contribute to his fall down the steps, does not know of anything Mr. Franz did that was wrong.

18) Section R311.7.7 of the 2009 Code specifies that handrails shall be provided on at least one side of each continuous run of treads or flight with four or more risers. Section 202 of the 2009 Code defines a flight as a continuous run of rectangular treads or winders or a combination thereof from one landing to another.

19) 2009 Code Section R311.7.7.2 states, handrails for stairways shall be continuous for the full length of the flight from a point directly above the top riser of the flight to a point directly above the lowest riser of the flight.

20) [T]he subject home or townhouse contained a lower level landing on the main level. The upper landing is the second floor of the top rise.

21) The stairway at this residence did not comply with the standards of the International Residential Building Code.

22) The absence of the handrail eliminates the occupant's ability to have the security of guidance, stabilization, pulling or assist in arresting a fall.

23) The absence of a handrail significantly increases the hazard of an occupant falling during ascending or descending the stairs.

24) Plaintiffs' expert believes that the absence of the handrail was a substantial factor and contributing cause of Mr. Franz falling down the stairwell to the floor below.

25) The Plaintiffs' expert believes that the lack of a handrail at the top of the stairs significantly increased the distance of the fall and thereby increased the severity of Mr. Franz' injuries.

26) Mr. Franz had successfully traversed the staircase, no doubt daily, for going on five months and without incident.

27) There was a defective condition on this property due to the absence of the handrail.

28) The defective condition was open and obvious.

In its conclusions of law, the Trial Court stated, as pertinent:

[I]n the context of injuries to plaintiffs resulting from a fall, mere speculation about the cause of an injury is insufficient to establish liability on a negligence claim. As such, a plaintiff will be prevented from establishing negligence when he either personally or with the use of outside witnesses is unable to identify what caused the fall. In other words, a plaintiff must know what caused him to slip and fall. A plaintiff cannot speculate as to what caused the fall. To claim as the Plaintiffs have claimed in their Complaint that Mr. Franz would not have fallen but for the absence of a handrail is a speculative position unsupported by Mr. Franz' sworn testimony, and speculation alone cannot support a negligence claim.

The Court acknowledges that an open and obvious danger does not automatically result in a finding of no duty and therefore, no landowner liability. A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by a defendant's conduct outweighs the burden upon the defendant to engage in alternative conduct that would prevent the harm. See Coln v. City of Savannah, 966 SW2d 34 (Tenn. 1998), citing *McCall vs. Wilder*, 913 S.W.2d 150 (Tenn. 1995). If the foreseeability and gravity of harm posed by the defendant's conduct, even if open and obvious, outweighed the burden upon the defendant to engage in alternative conduct, the defendant has a duty to act with reasonable care. And the comparative fault principles apply under *Mclntyre vs. Balentine*, applying the Restatement (Second) of Torts, Section 343A.

However, the Court believes here that the danger was known and appreciated by the Plaintiff, Mr. Franz. The risk was obvious to a person exercising reasonable perception, intelligence and judgment. There was no other reason for the Defendant to foresee the harm, and the risk of harm was not unreasonable and did not impose additional duties on the Defendant despite his open and obvious nature.

Applying all of the factors from *Coln v. City of Savannah* and the other cases cited by the Plaintiffs, *McCall v. Wilder* and *Vancleave v. Markowski*, to this case, the Court finds that the foreseeability and gravity of harm posed by the Defendant's conduct of allowing the defective condition to exist on the property, did not outweigh the burden on the Defendant to engage in alternative conduct. In this case, we have the epitome of an open and obvious condition. While the three cases cited by Plaintiffs say an open and obvious condition is not the end of the inquiry, each of these cases involved a condition which was new and unexperienced previously by the plaintiff. The

-8-

cited cases do not involve daily experiences with the open and obvious defective condition.

For example, in *Coln vs. City of Savannah*, the City had constructed brick pavers, and those pavers were installed below the level of the sidewalk and thus created a lip as a person walked from the pavers to the sidewalk. Ms. Coln walked across those pavers and tripped on the lip of the sidewalk and was injured. It was a defective condition, but it was new to her. There's no evidence in that case that that was anything other than the first time she had ever traversed those pavers. Ms. Coln hadn't been walking that way for five months without incident.

In *McCall v. Wilder*, a driver with a known medical condition suddenly lost control of a vehicle. In *Vancleave v. Markowski*, a neighbor visited another neighbor's pool and was walking in the pool deck area and stepped into a hole where a skimmer had been removed. It was a significant hole, three feet by eighteen inches. It was open and obvious, but there's no indication in the case that it was anything but a new experience to the neighbor. The neighbor was experiencing that open and obvious condition for the first time. There are no facts saying she had been around that pool before and that many times had traversed around that hole. And I think that makes a significant difference here, because the Plaintiff had been traversing those stairs for five months and was well-aware of the defective condition.

While the Court finds there was a defective condition, it was an open and obvious condition that the plaintiff had equal and superior knowledge of. Further, the Plaintiffs have not put forth evidence at this stage as to how the claimed defect caused the Plaintiff, Mr. Franz, to fall. Accordingly, the Court finds it would be improperly asking the jury to speculate in order to reach a determination on that issue.

Even though it is normally the task of the jury to determine in a comparative fault case who is liable, summary judgment is appropriate in a case where a reasonable person could not conclude anything other than that the plaintiff had to be at least fifty percent at fault. Here, in addition to the Mr. Franz's equal and superior knowledge of an open and obvious condition, the issue of speculation about what caused the fall, the Court finds this is a case where a reasonable person could not find that the Mr. Franz was anything other than at least fifty percent at fault.

WHEREFORE, the Court finds that the Defendant has negated essential elements of the Plaintiffs' claim, and that the Plaintiffs cannot prove their claim. Accordingly, the Court finds there is no genuine issue of material fact, and the Defendant is entitled to judgment as a matter of law.

Plaintiffs timely appealed to this Court.

## Discussion

We restate and consolidate Plaintiffs' issues into the following dispositive issue: whether the Trial Court erred in granting Defendant's motion for summary judgment.

Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare– Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary

judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

Plaintiffs alleged negligence and negligence per se in their complaint. With respect to negligence, our Supreme Court has explained:

As we have frequently observed, a negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See, e.g., Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). The duty element is a question of law requiring the court to determine "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Id*. at 870 (quoting W. Page Keeton, *Prosser & Keeton on Torts*, § 37 at 236 (5th ed. 1984)). Appellate review of a question of law is de novo. *Bradshaw*, 854 S.W.2d at 870.

In analyzing duty, the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed

on the defendant in protecting against that harm. *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 902 (Tenn. 1996). A "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994). Although the traditional rationale for imposing this duty was the owner's superior knowledge of conditions on the premises, *see e.g., Kendall Oil v. Payne*, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (Tenn. App. 1955), we recently held that a duty may exist even where the injury-causing condition is alleged to be "open and obvious" to the plaintiff. We explained:

> That a danger to the plaintiff was 'open or obvious' does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn. 1998).

The duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Prosser and Keeton on Torts*, supra, § 61 at 426. In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that

-12-

the jury may reasonably conclude that due care would have discovered it." *Id*. at 426-27. As we explained in *Doe v. Linder Const. Co*., 845 S.W.2d 173, 178 (Tenn. 1992):

> Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. '[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, *and that some action within the [defendant's] power more probably than not would have prevented the injury*.'

(emphasis added) (citations omitted).

*Rice v. Sabir*, 979 S.W.2d 305, 308-09 (Tenn. 1998) (footnote omitted).

Regarding negligence per se, liability under this doctrine "can arise when a party fails to perform a duty imposed by statute or ordinance." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 734 (Tenn. Ct. App. 2019). We have explained:

> The effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law. Thus, a person whose conduct is negligent per se cannot escape liability by attempting to prove that he or she acted reasonably under the circumstances. However, a finding of negligence per se is not equivalent to a finding of liability per se. Plaintiffs in negligence per se cases must still establish causation in fact, legal cause, and damages.

***

> The courts consider a number of factors to determine whether the violation of a statute should trigger the negligence per se doctrine. The two threshold questions in every negligence per se case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent. Affirmative answers to these questions do not end the inquiry. Courts also consider (1) whether the statute is the sole source of the defendant's duty to the plaintiff, (2) whether the statute clearly defines the prohibited or required conduct, (3) whether the statute would impose liability without fault, (4) whether invoking the negligence per se doctrine would result in damage awards disproportionate to the statutory violation, and (5)

-13-

whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Rains v. Bend of the River*, 124 S.W.3d 580, 590-91 (Tenn. Ct. App. 2003) (citations and footnotes omitted).

Plaintiffs argue that the Trial Court misapplied the "open and obvious" doctrine. Plaintiffs contend that the foreseeability and gravity of harm outweighed the burden on Defendant to engage in alternative conduct. Plaintiffs state that "[t]here is no importance, or social value, or usefulness to assign to a defendant's total disregard for Building Codes that are designed to provide safety in traversing stairs." According to Plaintiffs, disputed issues of causation and comparative fault preclude summary judgment.

For his part, Defendant states that Mr. Franz was aware of the missing handrail and went five months without incident. According to Defendant, Plaintiffs failed to establish the element of duty. Regarding causation, Defendant argues that there is no evidence Mr. Franz fell because of the missing handrail. Defendant states that "Plaintiffs have not proffered any evidence that the absence of the railing was the but for or proximate cause of Mr. Franz's fall and associated injuries; to the contrary, Mr. Franz testified that he did not reach for the handrail and, further, that he did not know what caused his fall."

While Defendant makes much of Mr. Franz's knowledge of the missing handrail, this Court has stated that "Tennessee case law does not automatically insulate a premises owner from a duty of care or liability simply because the danger was open and obvious." *Matherne v. West*, No. E2015-02061-COA-R3-CV, 2016 WL 6311283, at *13 (Tenn. Ct. App. Oct. 28, 2016), *no appl. perm. appeal filed*. We instead look to whether the "reasonably foreseeable probability and gravity of harm" outweighed the burden on the defendant "to engage in alternative conduct which would have prevented a risk of harm. . . ." *Id*. In *Matherne*, another premises liability case, one of the plaintiffs fell off an elevated parking level at the vacation cabin they were renting. *Id*. at *1. The protective rail on the upper parking level did not extend the length of the level. *Id*. The trial court granted summary judgment to the defendants, finding that the danger was open and obvious. *Id*. at *9. We reversed on appeal, stating in part that the "foreseeable probability and gravity of harm to an individual falling from the upper parking level to the lower parking level onto concrete outweighs the burden upon the Defendants to extend for a few more feet the railing already placed along most of both sides of the upper parking level." *Id*. at *13.

Returning to the appeal at bar, the reasonably foreseeable probability and gravity of harm to Plaintiffs was serious injury or even death from falling down the stairway, which lacked a code-compliant handrail. The comparatively light burden on Defendant— extending the handrail to the top of the stairs—plainly was outweighed by the risk to

-14-

Plaintiffs of serious injury or death. Defendant included some handrailing on the stairs, but not all the way to the top. It is obvious that for the portion lacking handrailing near the top of the stairs, a person using the stairs would lack anything to grab on to if they lost their balance as people sometimes do. There was only wall on either side. Regarding Mr. Franz's knowledge of the missing handrail, we note that equal knowledge of a defective condition does not necessarily mean equal understanding of the danger posed by that condition. Defendant built this townhouse and rented it out. He was supposed to know and comply with the building code for the safety of people renting from him. That Mr. Franz went five months using the stairs without incident did not relieve Defendant of his duty of care since the minimal burden of the alternative conduct—extending the handrail to the top of the stairs—was outweighed by the reasonably foreseeable risk to Plaintiffs of serious injury or death. Under common law principles of negligence, Defendant owed a duty of care.

Plaintiffs also alleged negligence per se based on a violation of the building code. "Tennessee courts have applied the doctrine of negligence *per se* in limited situations involving violations of the building code." *Pittenger v. Ruby Tuesday, Inc.*, No. M2006-00266-COA-R3-CV, 2007 WL 935713, at *4 (Tenn. Ct. App. March 28, 2007), *no appl. perm. appeal filed*. The Trial Court found that Caryville, the city that the townhouse is in, adopted the International Residential Building Code. For purposes of summary judgment, Defendant does not dispute that the stairs were non-compliant with code. Even still, we observe that not every violation of a statute or ordinance will give rise to negligence per se. In this case, however, Mr. Franz belonged to the class of persons that the continuous handrail provision of the building code was intended to protect. In fact, if not someone situated like Mr. Franz, a residential tenant making use of the stairs to go between the first and second floors of his rented house, we do not know who the continuous handrail provision of the building code was supposed to protect. Furthermore, Mr. Franz's injury—falling down the stairs—clearly was of a type that the continuous handrail provision was designed to prevent. The building code clearly defined what was required of Defendant with respect to the stairs, and Plaintiffs allege that Mr. Franz's fall was the result of Defendant's failure to comply with the building code when he built this defective stairway. Under these circumstances, the continuous handrail provision of the building code, part of the International Residential Building Code adopted by the City of Caryville, imposed a duty of care on Defendant. Therefore, in addition to a duty arising under common law principles of negligence, Defendant owed a duty of care under the doctrine of negligence per se.[1]

---

[1] Although not relied upon by Defendant, we are aware of the premises liability case of *Lewis v. Fletcher*, No. W2022-00939-COA-R3-CV, 2023 WL 8258340 (Tenn. Ct. App. Nov. 29, 2023), *perm. app. denied May 16, 2024*, in which we affirmed the trial court's grant of summary judgment to the defendants where the plaintiff fell down the stairs at a building leased by her employer. *Id*. at *1. We stated that the plaintiff failed to point to a building code provision "impos[ing] a duty on a <u>subsequent owner of a commercial</u>

Our holding as to duty does not end the inquiry. There remain questions of causation and comparative fault. With respect to causation, Defendant argues that the cause of Mr. Franz's fall is purely speculative. Defendant contends that Mr. Franz's failure to reach for a non-existent handrail shows that the missing handrail did not cause his fall, or at least that it would be too speculative to find that it was. However, this ignores the evidence put forward by Plaintiffs. Plaintiffs filed a report by structural engineer Duncan with their complaint and an affidavit by Duncan as part of their response to Defendant's motion for summary judgment. Duncan stated in his affidavit that "[t]he whole purpose of a safety handrail is to provide a means for a person to avoid losing their balance, and if they should lose their balance, to regain control or otherwise re-orient themselves." Duncan went on to opine that "it is more likely than not that the lack of a handrail at the top of the stairs in the subject townhouse was a substantial factor and contributing cause of Mr. Franz falling down the stairwell to the floor below," and that "the lack of a handrail at the top of the stairs significantly increased the distance of the fall and thereby increased the severity of his injuries."

At oral argument, Defendant's counsel argued that Duncan's opinion is of no help to Plaintiffs' case because Duncan is a structural engineer, not a biomechanical expert. We find this unpersuasive. First, Defendant has not raised an issue on appeal challenging

---

building to inspect the building and bring it in compliance with the code before leasing it to a tenant. Rather, she alleges a violation of section 1112.5.3 of the 1988 Standard Building Code, which simply states that '[s]tairways 44 inches wide or greater shall be equipped with handrails at least on both sides.'" *Id*. at \*5 (emphasis added, footnote omitted). *Lewis* cited, among other cases, *Lethcoe v. Holden*, 31 S.W.3d 254 (Tenn. Ct. App. 2000), a case in which we stated, in part:

> Generally, a landlord is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises.
>
> The general rule of a landlord's non-liability is subject to several exceptions. One exception applies if the following facts are shown: (1) the dangerous condition was in existence at the time the lease was executed; (2) the landlord knew or should have known of the dangerous condition; and (3) the tenant did not know of the condition and could not have learned about it through the exercise of reasonable care. As a natural corollary of this exception, when a landlord and a tenant have co-extensive knowledge of the dangerous condition, the landlord is not liable to the tenant, or the tenant's employees, for injuries sustained as a result of the dangerous condition.

*Lethcoe*, 31 S.W.3d at 256 (citations omitted). We find *Lewis* factually and legally distinguishable from the present case. For one, regarding negligence per se, the building code provision at issue here imposed a duty on Defendant, the builder and landlord of a residential building. Also, Defendant did not raise *Lewis*. *See Fitzgerald v. Hickman Cnty. Gov't*, No. M2017-00565-COA-R3-CV, 2018 WL 1634111, at \*18 (Tenn. Ct. App. April 4, 2018) *no appl. perm. appeal filed* ("Generally, arguments that are not raised in the trial court or on appeal are waived.").

Duncan's competence or the admissibility of his evidence. Second, it is a stretch to say that a structural engineer has nothing relevant to say about the danger that a deficient or incomplete handrail on a stairway poses to persons using that stairway. Viewing the evidence in the light most favorable to Plaintiffs, as we must at the summary judgment stage, it is a disputed fact whether Mr. Franz would have fallen all the way down the stairway if the handrail had been extended the length of the stairs as required by code. Defendant's theory that Mr. Franz's failure to reach for a non-existent handrail shows that the missing handrail did not contribute to his fall is one that could be put to the jury but is not conclusive at the summary judgment stage.[2]

Similarly, with respect to comparative fault, this matter is not amenable to summary judgment in view of the disputed issues of material fact. As we stated in *Matherne*:

> There seems little doubt that Defendants, had they chosen to do so, could have engaged in alternative conduct by extending the railing a few more feet for the full length of the upper parking level and that this would have prevented the harm to Mrs. Matherne. Could a rational trier of fact find that Mrs. Matherne was 50% or more at fault? Clearly the answer is yes. However, viewing the evidence in the light most favorable to Plaintiffs, again as we must at this summary judgment stage, we cannot say that a rational trier of fact could not find that the percentage of fault attributable to Mrs. Matherne was less than 50%. As such, there are genuine disputed issues of material fact with regard to comparative fault in this case, making summary judgment inappropriate.

*Matherne*, 2016 WL 6311283, at *14.

Likewise, here, there is little doubt that Defendant could have engaged in the alternative conduct of completing the handrail up the length of the stairway, and

---

[2] In their reply brief, Plaintiffs cite a Tennessee Supreme Court case, *Overton Square Inc. v. Bone*, 576 S.W.2d 762 (Tenn. 1979), in which a restaurant patron fell down some stairs onto a parking lot. *Id*. at 763. The patron sued, but "was unable to explain the initial cause of her fall." *Id*. The trial court directed a verdict in favor of the defendants, which we reversed on appeal. *Id*. On appeal to the Tennessee Supreme Court, the High Court stated that the defendants "were admittedly guilty of negligence in not having the type of handrails required by the city building code." *Id*. "The question presented, therefore, is whether or not the absence of a proper handrail was a proximate causative factor in the injuries which respondent sustained—or, more properly, whether the trier of fact could reasonably so determine." *Id*. The majority concluded that the case should be remanded for a new trial as "reasonable minds could differ as to whether the failure of petitioners to comply with the requirements of the building code was or was not a causative factor in producing the injuries suffered by respondent, a business guest on the premises." *Id*. at 764. We agree with Plaintiffs that *Overton Square* supports their position that a reasonable trier of fact could conclude that the missing handrail in this case was a causative factor in Mr. Franz's fall.

consequently, that Mr. Franz would have had a handrail to grab hold of when he lost his balance, arresting his fall and perhaps mitigating or preventing his injuries. We cannot say that a rational trier of fact could not find that the percentage of fault attributable to Mr. Franz was less than 50%. In sum, genuine issues of material fact exist in this case regarding causation and comparative fault. We therefore reverse the grant of summary judgment and remand to the Trial Court for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below and for further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Oscar Funes.

_____
D. MICHAEL SWINEY, CHIEF JUDGE